1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT

6 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8 BERRYESSA FOR ALL,                              No. C 07-259 SI

9          Plaintiff,                            **ORDER DENYING DEFENDANTS'
                                                 MOTION FOR JUDGMENT ON THE**
10   v.                                          **PLEADINGS; DENYING PLAINTIFF'S
                                                 MOTION FOR PRELIMINARY**
11 US BUREAU OF RECLAMATION,                      **INJUNCTION**

12          Defendant.
   _____/

13

14          On October 12, 2007, the Court heard argument on defendants' motion for judgment on the

15 pleadings, and plaintiff's motion for a preliminary injunction.  Following the hearing, the parties filed

16 supplemental briefs.  Having considered the parties' arguments and the record in this case, the Court

17 hereby DENIES defendants' motion for judgment on the pleadings and DENIES plaintiff's motion for

18 a preliminary injunction.

19

20                                   **BACKGROUND**

21          This case arises out of the impending expiration of seven concession agreements between private

22 concessionaires and the Bureau of Reclamation.  Since the 1950s, the Bureau of Reclamation has

23 authorized seven concessionaires to provide services to visitors at Lake Berryessa.  The concessionaires

24 conduct their business on federal land, and run seven resorts which provide long-term and short-term

25 camping, trailer and mobile home sites, as well as marina access and a variety of amenities.   The seven

26 concession agreements are set to expire between December 2007 and May 2009.

27          Plaintiff Berryessa for All is an unincorporated non-profit association comprised of families and

28 individuals who have seasonal or permanent homes at resorts surrounding Lake Berryessa.  These

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

families and individuals currently rent trailer and mobile home sites from the seven private concessionaires. The long-term users do not have any contractual or other arrangements directly with the Bureau of Reclamation. *See* Finnegan Decl. ¶ 6. Plaintiff's members also include businesses located at or near the resorts. Plaintiff's members do not include the seven concessionaires.

Plaintiff filed this action on January 16, 2007, challenging a new management plan approved by BOR that is intended to go into effect once the current concession agreements expire.[1] The new management plan, known as the "Visitor Service Plan" (also "VSP ROD"), eliminates the long-term "exclusive use" of federal property at the Lake by trailer and mobile home users.[2] The VSP ROD provides for the development of new facilities and programs to better serve the short-term visitor. The VSP ROD requires that all long-term trailers and mobile homes be removed from federal property at the Lake and replaced with short-term facilities under a framework developed by BOR for each individual concession area. Some long-term permittees have erected permanent structures at the sites they rent from the concessionaires; those structures must be removed under the VSP ROD. The VSP ROD also includes a range of mitigation measures, including those designed to address hardship situations.[3] The VSP ROD provides that after the current concession agreements expire, BOR will accept bids for new concession agreements geared at providing recreational facilities and services for short-term visitors.

Plaintiff alleges that BOR violated the National Environmental Policy Act, 43 U.S.C. §§ 4321 *et seq.*, by, *inter alia*, engaging in a flawed public comment process and failing to adequately consider the economic impact of the VSP ROD on the Lake Berryessa community. Complaint ¶¶ 31-35.

---

[1] On June 2, 2006, BOR adopted its Record of Decision ("ROD") for the Future Recreation Use and Operations of Lake Berryessa, Solano Project, Napa, California, Mid-Pacific Region (referred to as the Visitor Services Plan ("VSP") and collectively as "VSP ROD"). The VSP ROD followed the preparation and issuance of a Draft Environmental Impact Statement, dated October 2003, and a Final EIS, released November 2005.

[2] According to BOR policy LND 04-02, "Exclusive use is any use that excludes other appropriate public recreation use or users for extended periods of time. Exclusive use includes, but is not limited to, boat docks, cabins, trailers, manufactured or mobile homes, structures, or amenities that are determined by Reclamation to be exclusive use."

[3] In addition, the parties have entered into a Stipulation Governing Procedures for Hardship Cases and Partial Settlement Re: Mitigation Claims (Docket No. 45).

1   Plaintiff's complaint seeks declaratory and injunctive relief, and specifically seeks an order prohibiting

2   BOR from implementing the VSP ROD "until or unless such time as the BOR demonstrates to the Court

3   that is has complied with [the law]."   *Id*. at Prayer for Relief ¶ B.

4

5                                    **LEGAL STANDARDS**

6   **I.        Judgment on the pleadings**

7           A Rule 12(c) motion for judgment on the pleadings may be brought at any time after the

8   pleadings are closed, but within such time so as not to delay trial.  Fed. R. Civ. P. 12(c).  The standard

9   applied to decide a Rule 12(c) motion is the same as the standard used in a Rule 12(b)(6) motion to

10  dismiss for failure to state a claim.  Judgment on the pleadings is appropriate when, even if all material

11  facts in the pleading are accepted as true, the moving party is entitled to judgment as a matter of law.

12  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

13

14  **II.       Preliminary injunction**

15          The Court has the authority to grant a preliminary injunction in the exercise of its equitable

16  powers.  *See* Fed. R. Civ. P. 65.  As the Court is acting in equity, the decision to enter a preliminary

17  injunction is largely left to its discretion.  *See Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch.*

18  *Dist.*, 868 F.2d 1085, 1087 (9th Cir. 1989).

19          A plaintiff can demonstrate it is entitled to such preliminary relief in two ways.  Under the

20  "traditional criteria," a plaintiff must show: "(1) a strong likelihood of success on the merits, (2) the

21  possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships

22  favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."  *Earth Island*

23  *Institute v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006).  Alternatively, a plaintiff may

24  establish " either a combination of probable success on the merits and the possibility of irreparable harm

25  or that serious questions are raised and the balance of hardships tips sharply in his favor."  *Id*. (emphasis

26  in original).  The two formulations of the alternate test "represent two points on a sliding scale in which

27  the required degree of irreparable harm increases as the probability of success decreases."  *LGS*

28  *Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1155 (9th Cir. 2006).  However, in any

**United States District Court**
For the Northern District of California

situation, the Court must find "that there exists a significant threat of irreparable injury." *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985) (citing cases).

In addition to these factors, the Court must consider whether a proposed injunction would require excessive court supervision, or would otherwise be unenforceable. *See In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 545 (9th Cir. 1996); *Natural Res. Def. Council, Inc v. U.S. EPA*, 966 F.2d 1292, 1300 (9th Cir. 1992). The Court may deny injunctive relief if it would require "constant supervision" by the Court. *See Natural Res. Def. Council*, 966 F.2d at 1300.

## DISCUSSION

Plaintiff seeks a preliminary injunction "to prevent the imminent destruction of its members' homes, communities, their cherished family memories and the economic viability of the community." Plaintiff requests that the Court enjoin BOR from further implementing the VSP ROD and from awarding any new concession contracts, and to order BOR to either temporarily extend the existing concession contracts or issue temporary permits directly to permittees to allow the permittees to continue living at Lake Berryessa.[4] Defendants have filed a cross-motion for judgment on the pleadings, contending that plaintiff lacks both Article III and prudential standing.

## I.      Defendants' motion for judgment on the pleadings

Defendants contend that plaintiff lacks Article III standing because the main remedy that plaintiff seeks – an order directing BOR to take action to allow plaintiff's members to be able to continue living at Lake Berryessa  – is beyond the scope of this lawsuit.  Defendants argue that plaintiff's injury flows from the expiration of the concession agreements, which will occur regardless of whether plaintiff succeeds on its NEPA claims.

---

[4] Plaintiff originally requested additional relief, including an order that BOR (1) rescind orders allegedly requiring the concessionaires to issue eviction notices and requiring long-term permit holders to demolish their homes and improvements; (2) implement a plan to address "hardship cases"; and (3) to govern the Lake in accordance with the Resource Area Management Plan Record of Decision of 1993.  After defendants argued that the Court lacks jurisdiction to order BOR to undertake the kind of affirmative relief requested in plaintiff's opening papers, plaintiff narrowed its request for injunctive relief.

United States District Court
For the Northern District of California

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, *Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180-81 (2000). As discussed in Section II of this Order, the Court agrees with defendant that the primary relief plaintiff seeks in its motion for preliminary injunction is beyond the scope of this case. However, plaintiff's *complaint* alleges that defendant failed to comply with NEPA and the APA, and the relief sought in the complaint – defendant's compliance with NEPA and the APA – redresses that injury.

Defendants also contend that plaintiff lacks prudential standing because the declarations submitted by plaintiff allege injuries that are outside the zone of interests that NEPA was enacted to protect. Defendants are correct that a plaintiff alleging purely economic injury does not have standing under NEPA. *See Nev. Land Action Ass'n v. United States Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993). "A plaintiff can, however, have standing under NEPA even if his or her interest is primarily economic, as long as he or she also alleges an environmental interest or economic injuries that are causally related to an act within NEPA's embrace." *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005) (internal quotation and citation omitted). The zone of interests test is "not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

Here, plaintiff's members have submitted declarations stating that they actively use the lake for water skiing, fishing, and outdoor recreation, and that these interests will be harmed by implementation of the VSP ROD. These interests are within the zone of interests protected by NEPA. *See Ocean Advocates v. United States Army Corps of Eng'rs*, 402 F.3d 846, 861 (9th Cir. 2005) (holding organization that sought to avoid harmful effects of oil spills had standing under NEPA); *Northwest Envtl. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528-29 (9th Cir. 1997) (holding organizations had Article III standing based on declarations from members stating that recreational

1    interests would be harmed).[5]

2

3    **II.      Plaintiff's motion for preliminary injunction**

4              Plaintiff seeks an order enjoining implementation of the VSP ROD, enjoining BOR from

5    awarding new concession contracts, and either requiring BOR to temporarily extend the existing

6    concession contracts or directly issue permits to plaintiff's members to allow them to continue living

7    at Lake Berryessa.  In its moving papers, plaintiff contended that if the VSP ROD is implemented and

8    the concession contracts are allowed to expire, plaintiff's members and the surrounding community will

9    suffer significant loss of business, financial hardship, a loss of a way of life and an intangible sense of

10   connection to place, and a loss of community resources and services.  At the hearing and in its

11   supplemental papers, plaintiff focused less on these non-environmental harms, and instead argued that

12   the Lake will be irreparably harmed as a result of implementing the VSP ROD because the Final

13   Environmental Impact Statement failed to take account of the environmental impacts from the removal

14   of approximately 1200 mobile homes and associated infrastructure.

15

16        **A.      Non-environmental harm**

17             Plaintiff appears to concede that a remand of the VSP ROD, on its own, would have no effect

18   on the eviction of the permittees.  Plaintiff contends, however, that in addition to a remand, the Court

19   could order BOR to take action to allow the permittees to stay at the Lake pending the outcome of this

20   litigation.  Plaintiff argues that the Court could order BOR to either extend the current concession

21   agreements or issue temporary permits to the permittees to allow them to continue living at the Lake.

22             The Court concludes that plaintiff has failed to show that "there exists a significant threat of

23   irreparable injury" if the Court does not grant preliminary relief.  This is so because the non-

24   environmental injuries alleged by plaintiff and its members do not flow from implementation of the VSP

25

26   _____

27        [5] Defendants also contend that plaintiff lacks organizational standing because its members lack
     Article III and prudential standing.  Because defendants' arguments in this regard are duplicative, the
28   Court does not separately address the issue of organizational standing.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  ROD, but from the impending expiration of the concession agreements.[6]  While it is within the Court's

2  authority to enjoin implementation of the VSP ROD and remand the ROD to the agency, the Court is

3  doubtful that it could order BOR to extend the current contracts or issue permits to the permittees.

4  "[T]he only agency action that can be compelled under the APA is action legally required."  *Norton v.*

5  *Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) ("*SUWA*").  Section 706(1) of the APA

6  "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to

7  take action upon a matter, without directing how it shall act.'"  *Id.* at 64 (quoting Attorney General's

8  Manual on the Administrative Procedure Act 108 (1947)).

9        Here, all seven concession agreements are set to expire on their own terms between December

10 2007 and May 2009.  BOR entered into the concession agreements pursuant to authority granted in Pub.

11 L. No. 96-375, § 5(a), which provides that concession agreements "*may* be renewed a the request of the

12 concessionaire with the consent of the Secretary of the Interior for no more than two consecutive terms

13 of 10 years each."  Pub. L. No. 96-375, § 5(a), 94 Stat. 1505, 1506 (Attachment 2 to Defendants'

14 Motion) (emphasis added).[7]  Although the language of Pub. L. No. 96-375 suggests that BOR *could*

15 renew the concession agreements if the Secretary of the Interior so desired, nothing in that law requires

16 the Secretary to do so.  Plaintiff does not contend that BOR has violated any law by allowing the

17 concession agreements to expire on their own terms.  Under *SUWA*, the Court lacks authority to order

18 BOR to renew or extend the current concession agreements because those actions are discretionary.

19       Plaintiff also argues that a remand would afford BOR the opportunity to select a different

20 alternative that would not require the long-term permittees to vacate their sites.  However, even if the

21 Court remanded to BOR and BOR ultimately selected a different alternative, the remand process would

22 be lengthy and would not be completed until well after the concession agreements expired.  Defendants

23 have submitted the declaration of Michael Finnegan of the BOR, which states that if the Court were to

24 remand the VSP ROD to BOR for further consideration, it would take between 18 and 24 months to

25

26       [6] The Court addresses plaintiff's assertions regarding environmental harm *infra*.

27       [7] Similarly, the BOR Manual submitted by plaintiff in connection with its supplemental papers
   provides that "[i]n the event that unusual circumstances prevent Reclamation from issuing a new
28 contract in a timely manner, a one-time, temporary contract *may* be issued."  United States Bureau of
   Reclamation Manual, Directives and Standards LND 04-01 ¶ 2(B) (Iwama Decl., Ex. 1).

1   complete all necessary analysis, consideration, and public involvement activities before a new Record

2   of Decision could be issued. *See* Finnegan Decl. ¶ 7. According to defendants, after that process was

3   completed, it would take between 12 and 18 months to prepare a new concession prospectus, solicit

4   bids, and award one or more new concession contracts. *Id.* Moreover, a remand to BOR would not

5   automatically extend the current concession agreements; in short, a remand would not affect the current

6   concession agreements whatsoever.

7          Plaintiff also asserts, without any authority, that once the current concession agreements expire

8   the permittees would not be required to leave because Pub. L. No. 96-375 "does not specify that

9   permittees must vacate the premises immediately upon termination of the concessionaire contracts, nor

10  does it provide for a method of removal." Plaintiff's Reply at 3. Plaintiff's argument must fail. Pub.

11  L. No. 96-375 simply provides the Secretary of the Interior with the authority to enter into concession

12  agreements, and does not address in any way the situation under which concessionaires rent sites for

13  long-term use by individuals.

14         Plaintiff also argues that BOR could take over management of the resorts from the current

15  concessionaires and allow the current long-term permittees to stay on the sites. Plaintiff cites no

16  authority for this assertion. However, even if it is true that BOR *could* allow the long-term permittees

17  to stay on the federal land, there is no law *requiring* BOR to do so. The long-term permittees' legal

18  right to stay on the federal land ends when their permits expire. Any permittees who stay on the land

19  after the expiration of their permits are potentially in trespass. *See, e.g.*, *United States v. Murad*, No.

20  C 06-1304 SBA (JCS) (N.D. Cal. Dec. 20, 2006), Report & Recommendation re: Motions for Entry of

21  Default Judgment (holding that individuals who overstayed expiration of permits at resort in Lake

22  Berryessa were in trespass); Order Adopting Report and Recommendation (Feb. 22, 2007) (both

23  attached as Ex. 1, 2 to Glazer Reply Decl.); *see also Sweetnam v. Babbitt*, No. Civ. 94-0053 PHX RCB

24  (D. Ariz. Jan. 24, 1994) (trailer park tenants had no right to remain in possession after expiration of

25  concession contract under which they had leased trailer sites).

26         Defendants have also submitted evidence showing that it would not be practically feasible to

27  allow the permittees to continue living at the Lake after the concession agreements expire. Pedro

28  Lucero, Chief, Recreation Resources Division, Central California Area Office of the BOR, states,

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

> Should an existing concession contract expire with no new contract in place (either successively with the existing contractor or with any new contractor), there will be no entity in place to operate and maintain water systems, electrical service, aeration ponds, and other sewerage facilities or other infrastructure necessary to support any trailers that remain. This represents a serious public health issue and potential compliance problem with California Regional Water Quality Control Board requirements for operation of public water and sewer facilities. Even if it were legally and practically possible for Reclamation to enter into individual agreements of some sort with each trailer owner, there would be no mechanism for collecting rent payments in compliance with federal appropriations law, and no management entity for other administrative concession operations. Reclamation is not funded, prepared, nor willing to perform these functions.

7   Lucero ¶ 7. Thus, even if the Court had the authority to order BOR to allow the permittees to continue

8   living at the Lake after the concession agreements expire, such an injunction would require excessive

9   court supervision, or would otherwise be unenforceable. *See In re Estate of Ferdinand Marcos Human*

10  *Rights Litig.*, 94 F.3d at 545; *Natural Res. Def. Council*, 966 F.2d at 1300.

11

12        **B.        Environmental harm**

13        Plaintiff also asserts that the Lake "faces significant and pressing environmental impacts" due

14  to the removal of the permittees' property. Plaintiff does not specify any particular harm that will occur

15  to the Lake. In support of this assertion, plaintiff has submitted a brief filed in *Frazier, et al., v. United*

16  *States*, No. 07-636, along with copies of excerpts from the administrative record in the *Frazier* case.

17  Those excerpts include internal emails between BOR employees discussing the need for site specific

18  plans before removal can occur. *See* Iwama Decl. Ex. B (email from Pedro Lucero stating, *inter alia*,

19  "Most retaining walls need to remain until a development plan outlines construction activities, then the

20  wall will be removed appropriately by the new contractor, assuring proper drainage and soil

21  stabilization. That is why we used the less direct term 'Possibly,' these removals will be site specific,

22  ensuring that the removals can be safely done."). Plaintiff contends that BOR violated NEPA by failing

23  to plan for the "entirely foreseeable" environmental impacts of the removal of the permittees' property,

24  and that the fact that the details are site-specific does not excuse the agency from considering the issue

25  in the EIS.

26        Defendants contend that NEPA does not require site-specific analysis in an EIS, and that the

27  record here shows that removal or demolition of trailers or other infrastructure will be undertaken in

28  accordance with applicable regulatory requirements and procedures. Defendants note that the VSP ROD

states that removal of trailers, mobile homes and associated personal property will be conducted subject to site-specific environmental analysis as appropriate.  *See* VSP ROD at 5, 10, 12, 14-15.  Mr. Lucero, who is charged with administering implementation of the VSP ROD, including matters relating to removal or demolition of trailer homes and infrastructure, states in his declaration,

> Removal or demolition of the trailer homes currently occupying sites at the Resorts will be conducted in accordance with the National Environmental Policy Act, Clean Water Act, Endangered Species Act, National Historic Preservation Act Section 106, appropriate Best Management Practices, and other appropriate regulations as required. The removal or demolition of other Resort infrastructure (if determined to be desirable and appropriate after the award of new concession contracts) will also be conducted in accordance with those requirements and procedures.

> The removal and transportation off site of those trailer homes that will not be demolished on site will be coordinated with the California Department of Transportation ("CalTrans") to address traffic and safety concerns.  CalTrans has expressed to date no opposition to Reclamation's plan to remov[e] all trailer homes from the Resorts.

Lucero Decl. ¶¶ 3-4.

The Court concludes that plaintiff has not demonstrated that there is a significant threat of irreparable injury to the Lake.  At most, plaintiff's evidence shows that the removal and/or demolition of trailers and related infrastructure may be a substantial undertaking, and that BOR staff will be managing and coordinating the removal and/or demolition on a site-specific basis.  Any ensuing environmental harm to the Lake is speculative.  The Court also agrees with defendants that NEPA does not require a site-specific analysis of removal and demolition in the EIS.  *See City of Alexandria v. Slater*, 198 F.3d 862, 869-71 (D.C. Cir. 1999) (holding "terseness of the Administration's discussion of construction impacts" complied with NEPA so long as agency considered environmental impacts on a general level); *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 800 (9th Cir. 2003) ("An EIS for a programmatic plan . . . must provide 'sufficient detail to foster informed decision-making,' but 'site-specific impacts need not be fully evaluated until a critical decision has been made to act on site development.'") (quoting *N. Alaska Envt'l Ctr. v. Lujan*, 961 F.2d 886, 890-91 (9th Cir. 1992)).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for a preliminary injunction (Docket No. 15), and DENIES defendant's motion for judgment on

1   the pleadings.  (Docket No. 18).

2        **IT IS SO ORDERED.**

3   Dated: November 27, 2007

                                                                   

4                                                               SUSAN ILLSTON
                                                              United States District Judge

**United States District Court**
For the Northern District of California